**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

| | | |
|---|---|---|
| SHORE BUILDING CONTRACTORS, INC., | ) ) ) | TAX COURT OF NEW JERSEY DOCKET NO. 002298-2012 DOCKET NO. 016994-2012 |
| Plaintiff, | ) ) | Civil Action |
| v. | ) ) | |
| DIRECTOR, DIVISION OF TAXATION, | ) ) | |
| Defendant. | ) ) | |
| ROBERT J. JOHNSON, JR., and ELIZABETH G. JOHNSON, | ) ) ) | TAX COURT OF NEW JERSEY DOCKET NO. 002027-2012 DOCKET NO. 010595-2012 |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | |
| DIRECTOR, DIVISION OF TAXATION, | ) ) | |
| Defendant. | ) ) | |
| ROBERT CAPOFERRI, and KATHLEEN CAPOFERRI, | ) ) ) | TAX COURT OF NEW JERSEY DOCKET NO. 017329-2011 DOCKET NO. 010597-2012 |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | MEMORANDUM OPINION |
| DIRECTOR, DIVISION OF TAXATION, | ) ) | |
| Defendant. | ) ) | |

Decided:  October 3, 2019

Robert F. Salad, Esq.
(Cooper Levenson, P.A., attorneys) for plaintiffs

Heather Lynne Anderson, Esq.
(Gurbir S. Grewal, Attorney General of New Jersey, attorney) for defendant

DeALMEIDA, J.T.C. (t/a)

This is the court's opinion after trial in the above-referenced matters in which plaintiffs challenge two final determinations of the Director, Division of Taxation (Director) denying requests for refunds of New Jersey corporation business tax (CBT) for tax years 2006 and 2007, and four final determinations of the Director assessing New Jersey gross income tax (GIT) for tax years 2006 and 2007.

## I. Findings of Fact

The following findings of fact are based on the evidence adduced at trial.

A.    Shore Building Contractors, Inc.

Plaintiff Shore Building Contractors, Inc. (Shore Building) is a closely-held corporation that acts as a general contractor in the construction industry. Plaintiffs Robert J. Johnson, Jr. and Robert Capoferri each hold a fifty-percent interest in the corporation. Johnson is the President and Treasurer of Shore Building and Capoferri serves as Vice President and Secretary. The company's Board of Directors consists of only Johnson and Capoferri.[1]

According to a February 3, 1996 shareholder agreement, both Johnson and Capoferri have responsibility for the day-to-day operations of Shore Building. Johnson provides general construction field experience, including estimating, staffing, and material logistics. Capoferri provides construction executive and administrative experience, including contracting, union relations, banking, bonding, and accounting.

---

[1] During the tax years in question, plaintiff Elizabeth G. Johnson was the spouse of Robert J. Johnson, Jr. and plaintiff Kathleen Capoferri was the spouse of Robert Capoferri. Because the couples filed joint GIT returns for the tax years in question, Ms. Johnson and Ms. Capoferri are included in the Director's final determinations. In this opinion, "Johnson" refers to Mr. Johnson and "Capoferri" refers to Mr. Capoferri.

Since the formation of the company, Johnson and Capoferri have devoted a significant amount of time working for Shore Building. During the tax years in question, the company was Johnson's primary source of income and his only business. Capoferri, on the other hand, owned a number of entities in the construction industry from which he derived income. He informally divided his time among his businesses as needed and was actively involved in the operations of Shore Building. Although Capoferri spent a significant amount of time working for Shore Building, no records were kept of the time he devoted to the entity.

Paragraph 7 of the shareholder agreement provides that

> [a]ny profits earned by [Shore Building] shall be divided and paid annually to each shareholder for their respective managerial services as agreed upon, and in the absence of mutual agreement any dispute shall be resolved in the profits being in [sic] divided in proportion to each shareholder's respective share of ownership. It is the express intention of this Agreement that this be undertaken in the manner in which both the shareholders and [Shore Building] realize the least amount of combined net tax.

No entries were made in Shore Building's records memorializing a debt to Johnson or Capoferri in any year for managerial services provided to the company.

Every year, Johnson received a salary from Shore Building. He earned $119,600 in wages in 2006 and $356,000 in wages in 2007.[2] Capoferri never received a salary from Shore Building.

Johnson and Capoferri recognized in the shareholder agreement that it may be necessary from time to time to lend money to Shore Building. According to the agreement, all funds lent to

---

[2] In 2006, Johnson received his salary from Shore Transport, Inc. (Shore Transport), a company owned by Capoferri. In 2007, Johnson received his salary from both Shore Transport and Asphalt Paving Systems, Inc. (Asphalt Paving), another entity owned by Capoferri. Johnson had no financial interest in, and provided no services to, those entities. Shore Building reimbursed the two companies monthly for the salary and benefits they paid to Johnson. This arrangement allowed Johnson to be a member of the union with which Shore Transport and Asphalt Paving had contracts, qualifying him for health and retirement benefits.

Shore Building by Johnson or Capoferri, apart from temporary advances, shall be evidenced by a promissory note setting forth specific terms, including the date and term of the loan, interest rate, amount, and method of payment.

In 2002, the CFO of Shore Building notified Johnson and Capoferri that it was necessary to loan the company $200,000 to meet expenses. A June 30, 2002 promissory note evidences a $200,000 debt Shore Building owes to Johnson and Capoferri for the loan. The note, at a rate of seven percent interest annually, is payable on demand and does not contain a payment schedule.

Shore Building's financial success depended in large part on the state of the economy and the fortunes of the Atlantic City casino industry. The corporation was moderately successful or operated at a loss during 2002, 2003, and 2004. No distribution of profits was made by Shore Building to Johnson and Capoferri in those years. In 2005, Shore Building's annual profit was approximately $566,000, significantly higher than the prior three years. Despite paragraph 7 of the shareholder agreement, the profits earned by Shore Building in 2005 were not distributed to Johnson and Capoferri.

In both 2006 and 2007, Shore Building's annual profit jumped to approximately $1 million. In 2006, Shore Building distributed a total of $764,315 to Johnson and Capoferri. Johnson received $382,157 and Capoferri received $382,158. In 2007, Shore Building distributed a total of $2,163,668 to Johnson and Capoferri. Each received $1,081,834.

B.    Asphalt Paving.

In 2001, Capoferri owned an entity that sold its assets and liabilities to Asphalt Paving, a company formed by Kenneth Messina, in exchange for $7.5 million in promissory notes. One note issued at the time of the sale obligated Asphalt Paving to pay Capoferri $1.5 million. Capoferri was taxed on his gain from this sale.

Messina was not successful in operating Asphalt Paving. As a result, the company became delinquent on its payments on the notes held by Capoferri. Ultimately, because of the default on the promissory notes, Capoferri gained ownership of Asphalt Paving by purchasing stock from Messina for a nominal amount. At the time, the $1.5 million promissory note issued in 2001 remained unpaid.

C.      Equipment Finance Specialists, Inc.

Capoferri is the sole owner of Equipment Finance Specialists, Inc. (Equipment Finance). He formed the company to loan money to Asphalt Paving at below market interest rates for the purchase of small trucks and other equipment to be used in Asphalt Paving's business. On December 31, 2005, Equipment Finance signed a $100,000 promissory note in favor of Capoferri after he loaned that amount to the company.

D.      The Tax Year 2006 Returns.

Shore Building filed a timely 2006 CBT return. Schedule C-1 of the return reported the company issued a total $764,315 cash distribution or dividend to Johnson and Capoferri. In addition, schedule F reported Johnson and Capoferri received $0 compensation from Shore Building in 2006. Schedule G reported interest payments of $7000 each to Johnson and Capoferri on the June 30, 2002 promissory note. Schedule B reported outstanding shareholder loans of $200,000 as of both the start and the end of 2006.

Asphalt Paving also filed a timely 2006 CBT return. Schedule C-1 of the return reported the company issued a $263,160 cash distribution or dividend to Capoferri.

Finally, Equipment Finance filed a timely 2006 CBT return. Schedule C-1 of the return reported the company issued a $23,637 cash distribution or dividend to Capoferri.

Johnson filed a timely 2006 GIT return. Although the return reported $119,600 in wages, it did not report the $382,157 distribution he received from Shore Building. In addition, Johnson's 2006 GIT return reported he received $26,565 in interest from Shore Building. The interest reported presumably includes $7000 in interest on the June 30, 2002 promissory note.

Capoferri also filed a timely 2006 GIT return. The return did not report as income the $382,158 distribution he received from Shore Building, the $263,160 distribution he received from Asphalt Paving, or the $23,637 distribution he received from Equipment Finance. The return reported Capoferri received $7000 in interest from Shore Building, presumably on the June 30, 2002 promissory note. In addition, the return reported $97,500 in interest from Asphalt Paving and $15,649 in interest from Equipment Finance.

E.      The Tax Year 2007 Returns.

Shore Building filed a timely 2007 CBT return. Schedule C-1 of the return reported the company issued a total $2,163,668 cash distribution or dividend to Johnson and Capoferri. In addition, schedule F reported Johnson and Capoferri received $0 compensation from Shore Building in 2007. Schedule G reported interest payments of $7000 each to Johnson and Capoferri, presumably on the June 30, 2002 promissory note. Schedule B reported outstanding shareholder loans of $200,000 as of the start of tax year 2007, and $0 in such loans at the end of 2007.

Johnson filed a timely 2007 GIT return. Although the return reported $356,000 in wages, it did not report the $1,081,834 distribution he received from the company. In addition, Johnson's 2007 GIT return reported he received $50,136 in interest from Shore Building. The interest reported presumably includes $7000 in interest on the June 30, 2002 promissory note.

Capoferri also filed a timely 2007 GIT return. The return did not report any wage income from Shore Building or the $1,081,834 distribution he received from the company. The return

reported receipt of $50,137 in interest from Shore Building. This figure presumably includes $7000 in interest on the June 30, 2002 promissory note.

F.      Notices from Division of Taxation.

In 2010, the Division of Taxation (Division) issued a notice to Johnson stating that an audit of his 2006 GIT return revealed he did not report the $382,157 distribution he received from Shore Building that year. Citing N.J.S.A. 54A:5-1(f), the Division stated that profits distributed from a New Jersey C corporation to a shareholder are taxable as dividends, and adjusted Johnson's taxable income accordingly. As a result of the adjustment, the Division assessed $22,275.46 in GIT, plus penalties and interest, on the unreported income.

In 2011, the Division issued a notice to Johnson stating that an audit of his 2007 GIT return revealed he did not report the $1,081,834 distribution he received from Shore Building that year. Relying on the same statutory provision, the Division adjusted Johnson's income and assessed $94,005 in GIT, plus penalties and interest, on the unreported income.[3]

In 2010, the Division issued a notice to Capoferri stating that an audit of his 2006 GIT return revealed he did not report $668,955 in corporate distributions he received that year. The unreported income was comprised of the $382,158 distribution from Shore Building, the $263,160 distribution from Asphalt Paving, and the $23,637 distribution from Equipment Finance. The Division adjusted Capoferri's taxable income by $668,955, and assessed $56,942 in GIT, plus penalties and interest, on the unreported income.

In 2011, the Division issued a notice to Capoferri stating that an audit of his 2007 GIT return revealed he did not report the $1,081,834 distribution he received from Shore Building that

_____

[3] The 2011 notice also adjusted Johnson's distributive share of partnership income from other entities by $2296. That adjustment is not before the court.

year. The Division adjusted Capoferri's taxable income by $1,081,834, and assessed $123,643 in GIT, plus penalties and interest, on the unreported income.[4]

G.     The 2006 Amended Returns.

According to the CFO of Shore Building, who prepared all of the returns at issue here, he did not not intentionally exclude the corporate distributions from Johnson's and Capoferri's GIT returns. He attributed the oversight to software he used to prepare the returns and the corporate entities' status as S corporations for federal tax purposes. The companies are taxed as a C corporations for State tax purposes. On the federal level, the distributions pass through to Johnson and Capoferri as taxable income. The CFO overlooked the fact that a pass through to the shareholders does not take place under New Jersey law, requiring the distributions to be reported on the individual shareholders' GIT returns as income. Apparently, the software used by the CFO did not account for this distinction.

In response to the notices, the CFO determined that he erroneously characterized the Shore Building distribution of $764,315 in 2006. He determined the distribution should have been treated first as payment of the $200,000 principle of the June 30, 2002 promissory note, with Johnson and Capoferri each receiving $100,000. He determined that this portion of the distribution was not taxable income to Johnson and Capoferri because it was the return of loaned funds. He treated the remaining $564,315 of the distribution ($764,315 - $200,000 = $564,315) as compensation for managerial services pursuant to the shareholder agreement, resulting in taxable income of $282,158 each for Johnson and Capoferri ($564,315 ÷ 2 = $282,157.50).

---

[4] The Division made a number of other adjustments to Capoferri's 2007 taxable income. Those adjustments are not before the court.

Having no documentary evidence supporting repayment of the June 30, 2002 promissory note, the CFO drafted a release dated August 12, 2010, but effective December 31, 2006. The release, however, describes Shore Building as the holder of the June 30, 2002 promissory note and states that the company received a $200,000 payment on the note from Johnson and Capoferri. At trial, the CFO recognized that the August 12, 2010 release was erroneous.

In addition, the CFO filed an amended 2006 CBT return on behalf of Shore Building. In the amended return, Shore Building reported the $764,315 distribution as: (1) a $200,000 loan repayment and; (2) $564,315 in compensation to Johnson and Capoferri for managerial services. In addition, the amended return reports loans from shareholders as $200,000 as of the start of the tax year, and $0 as of the end of the tax year. Shore Building deducted the $564,315 payment for managerial services as a business expense, reducing its taxable entire net income. As a result, Shore Building's CBT liability on the amended return was reduced by $51,471, which it sought as a refund.

Johnson filed an amended 2006 GIT return on which he reported an additional $7000 in interest received on the June 30, 2002 note, as well as an additional $282,157 in "other" income to account for the distribution from Shore Building, minus the $100,000 he characterized as a return of money he loaned to the company. The amended return increased Johnson's GIT liability for 2006 by $18,420.

Capoferri also filed an amended 2006 GIT return on which he reported an additional $282,158 in "other" income to account for the distribution from Shore Building, minus the $100,000 he characterized as a return of money he loaned to the company. He did not amend the amount of reported interest he received from Shore Building in 2006. The amended return increased Capoferri's GIT liability for 2006 by $22,875.

Asphalt Paving filed an amended 2006 CBT return. The amended return showed a reduction in shareholders loans from the start of the year to the end of the year of $263,160.

Equipment Finance also filed an amended 2006 CBT return. The amended return showed a reduction in shareholders loans from the start of the year to the end of the year of $23,637.

H.     Amended 2007 Returns.

The CFO also filed an amended 2007 CBT return on behalf of Shore Building. In the amended return, Shore Building reported $2,177,668 paid to Johnson and Capoferri for managerial services.[5] In addition, the amended return reported loans from stockholders as $0 at the start and end of the year. Shore Building deducted the reported payment for managerial services as a business expense, reducing its taxable entire net income. As a result, Shore Building's CBT liability on the amended return was reduced by $94,324, which it sought as a refund.

Johnson filed an amended 2007 GIT return on which he removed $7000 in interest received on the June 30, 2002 promissory note and added $1,088,834 in "other" income to account for the distribution from Shore Building. The amended return increased Johnson's GIT liability for 2007 by $93,799.

Capoferri also filed an amended 2007 GIT return on which he removed $7000 in interest received on the June 30, 2002 note and added $1,091,134 in "other" income to account for the distribution from Shore Building. This figure apparently is comprised of the $1,088,834 distribution, and an additional $2300 not explained at trial. The amended return increased Capoferri's GIT liability for 2007 by $95,084.

---

[5] Having deemed the note to have been satisfied as of December 31, 2006, Shore Building apparently accounted for its 2007 payment of $14,000 in interest to Johnson and Capoferri by including the $14,000 as part of the management fee ($2,163,668 + $14,000 = $2,177,668).

Asphalt Paving filed an amended 2007 CBT return. The amended return showed a reduction in shareholders loans from the start of the year to the end of tax year of $248,375.

Equipment Finance also filed an amended 2007 CBT return. The amended return showed a reduction in shareholder loans from the start of the tax year to the end of the tax year of $56,637.

I.    The Division Notices to Shore Building.

In 2011 and 2012, the Division issued two notices to Shore Building rejecting the refunds requested in the amended CBT returns for 2006 and 2007. The notices provided in relevant part:

> Per submitted "Agreement among Shareholders," any profits earned by the Corporation shall be distributed among shareholders based on respective managerial services and/or share of ownership. The Division concluded that the distribution of management fees is the distribution of dividend income in real nature. Here, the distribution is directly related to the availability of profits of the corporation rather than services rendered by the shareholders. Therefore, the 2006 [and 2007] amended return[s] and the related refund claim[s], where the taxpayer is expensing management fee, [are] denied.

J.    The Director's Final Determinations.

After an administrative conference, the Director issued four final determinations upholding the assessment of GIT, penalties, and interest against Johnson and Capoferri for tax years 2006 and 2007, as detailed in the audit notices. In addition, the Director issued two final determinations upholding the denial of Shore Building's requests for a refund of CBT for tax years 2006 and 2007.

K.    Tax Court Proceedings.

The taxpayers filed timely complaints challenging the Director's final determinations. The matters were tried together over two days. In its complaints, Shore Building alleges that its distributions to Johnson and Capoferri in 2006 and 2007 were reasonable compensation for management services, which is deductible from its taxable income, and not dividends, which are not deductible. The complaints do not mention the repayment of loaned funds.

11

Johnson alleges $100,000 of the distribution he received from Shore Building in 2006 was repayment of the June 30, 2002 promissory note and is not, therefore, taxable income. He also alleges that the remaining portion of the 2006 distribution and the entire 2007 distribution from Shore Building should be characterized as compensation for management services and not as dividends. The characterization of those distributions, however, will not affect Johnson's 2006 and 2007 GIT liabilities because both compensation and dividends are taxable income for Johnson.

Capoferri alleges $100,000 of the distribution he received from Shore Building in 2006 was repayment of the June 30, 2002 promissory note and is not, therefore, taxable income, and that the remaining portion of the distribution was compensation for management services. He also alleges the distributions he received in 2006 of $263,160 from Asphalt Paving and $23,637 from Equipment Finance were repayment of loans and not taxable income. With respect to tax year 2007, Capoferri alleges that the distribution he received from Shore Building was not a dividend. As noted above, characterization of the distributions as either compensation or as dividends would not affect Capoferri's GIT liability, as both are taxable income.

## II. Conclusions of Law

The parties' arguments are viewed in light of the familiar principle that the Director, Division of Taxation's interpretation of tax statutes is entitled to a presumption of validity. "Courts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984)). The scope of judicial review of the Director's decision with respect to the imposition of a tax "is limited." Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J. Super. 104, 109 (App. Div. 2006); Int'l Business Machs. Corp. v. Director, Div. of Taxation, 26 N.J. Tax 102, 107-08 (Tax 2011). The

Supreme Court has directed courts to accord "great respect" to the Director's application of tax statutes, "so long as it is not plainly unreasonable." Metromedia, 97 N.J. at 327; see also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306 (1993) ("Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing."). However, judicial deference is not absolute. An administrative agency's interpretation of the law that is plainly at odds with the statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568 (2008) (citing GE Solid State, 132 N.J. at 306).

The taxpayers bear the initial burden of overcoming the presumption of correctness attached to the assessment. Atl. City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146 (1953). Once the presumption is overcome, the taxpayers must prove what they contend are the correct assessments with competent evidence. TAS Lakewood, Inc. v. Director, Div. of Taxation, 19 N.J. Tax 131, 140 (Tax 2000).

The court begins its analysis with Shore Building's 2006 and 2007 distributions to Johnson and Capoferri. The distributions raise two issues: (1) whether $200,000 of the 2006 distribution was repayment of the June 30, 2002 promissory note; and (2) whether the remainder of the 2006 distribution and all of the 2007 distribution were compensation for managerial services or dividends. The first question is relevant to Johnson's and Capoferri's 2006 GIT liability because funds received as repayment of a loan are not taxable income for GIT purposes, while dividends are taxable income. N.J.S.A. 54A:5-1(f). The second question is relevant to Shore Building's 2006 and 2007 CBT liability because payments to compensate for managerial services are deductible from Shore Building's taxable income for CBT purposes. Payments of dividends to shareholders are not deductible from Shore Building's taxable income under the CBT Act.

13

A.    Repayment of Loaned Funds.

    1.    Shore Building.

The June 30, 2002 promissory note was admitted at trial.  The Director does not dispute its validity or the fact that the note was issued to facilitate Shore Building's operations.  The only question before the court is whether $200,000 of the 2006 distribution represented Shore Building's repayment of the note.  The court will look to the books and records of Shore Building to determine if a repayment of the loan was established.  See Mahoney v. Minsky, 39 N.J. 208, 220-21 (1963).

On its original 2006 CBT return, Shore Building reported the entire 2006 distribution to Johnson and Capoferri as a cash distribution or dividend.  In addition, the return reported $7000 in interest payments to Johnson and Capoferri on the promissory note and shows $200,000 in shareholder loans at both the start and the end of the tax year.  This suggests the note was not satisfied in 2006.  However, Shore Building's amended 2006 CBT return reported $200,000 in shareholder loans as of the start of the tax year and no shareholder loans at the end of the tax year, suggested satisfaction of the note in 2006.  In addition, Shore Building paid Johnson and Capoferri $14,000 in interest in 2007, suggesting the note remained unpaid in 2007.  Yet, the company's amended 2007 CBT return accounts for the $14,000 by re-characterizing it as part of the management fee paid to Johnson and Capoferri in 2007.  Furthermore, in 2010, after receipt of the Division's audit notices, Shore Building's CFO prepared a release of the note.  However, as noted above, the release erroneously purports to release Johnson and Capoferri from a $200,000 debt to Shore Building, which is the opposite of the debt memorialized in the promissory note.

The courts accepts as credible the CFO's testimony that Johnson, Capoferri, and Shore Building intended to execute a release of the June 30, 2002 promissory note, effective December 2006, and that he erred when drafting the release.  Based on the intent of parties, and the CFO's

credible testimony, the court is satisfied plaintiffs produced competent evidence that $200,000 of the 2006 Shore Building distribution was repayment of the June 30, 2002 promissory note.[6]

2.  Asphalt Paving.

Capoferri argues the $263,160 distribution he received from Asphalt Paving in 2006 was partial repayment of the $1.5 million promissory note outstanding at the time he purchased the company. The evidence adduced at trial does establish repayment of the note. The 2006 general ledger of Asphalt Paving records the $236,160 distribution as an "Officer Advance," not as repayment of the promissory note. The 2006 general ledger reports $1,673,448.99 in long-term debt for the company. The 2007 general ledger reports $1,664,691.17 in long-term debt, a reduction of only $8,757.50. No records memorializing a $236,160 reduction of debt were admitted at trial. Asphalt Paving's amended 2006 CBT return, which shows a reduction in shareholder debt of $236,160, is insufficient, standing alone, to establish the $236,160 distribution was repayment of a loan.

3.  Equipment Finance.

Capoferri argues the $23,637 distribution he received from Equipment Finance in 2006 was repayment of a loan. The evidence adduced at trial does establish repayment of the note. No records from Equipment Finance memorializing a $23,637 reduction of shareholder debt were admitted at trial. Equipment Finance's amended 2006 CBT return, which shows a reduction in shareholder debt of $23,637, is insufficient, standing alone, to establish the $23,637 distribution was repayment of a loan.[7]

---

[6]  The court makes no finding with respect to whether the 2010 release is valid.

[7]  In his closing statement, Capoferri's counsel argued distributions Capoferri received in 2007 from the entities were repayments of loans. The record contains no credible evidence supporting this argument.

The Director's final determinations assessing GIT on Johnson and Capoferri for tax year 2006 must be adjusted to account for each taxpayer having received a $100,000 repayment of money they loaned to Shore Building. The remainder of the Director's tax year 2006 GIT final determinations, and his final determinations regarding the taxpayers' 2017 GIT obligations are upheld.

B.    Dividends or Compensation for Services.

The CBT Act imposes a tax on each non-exempt domestic corporation and foreign corporation "for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." N.J.S.A. 54:10A-2. The tax is imposed on a corporation's "entire net income," which is defined as follows:

> "Entire net income" shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.
>
> [N.J.S.A. 54:10A-4(k).]

This broad definition of entire net income is limited in the following paragraph of the statute:

> For the purpose of this act, the amount of a taxpayer's entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report . . . to the United States Treasury Department for the purpose of computing its federal income tax . . . .
>
> [N.J.S.A. 54:10A-4(k).]

As Judge Kuskin explained in Seventeen Thirty Corporation v. Director, Division of Taxation, 18 N.J. Tax 168, 175 (Tax 1999),

16

The reference in N.J.S.A. 54:10A-4(k) to "federal income tax" incorporates certain provisions of the Internal Revenue Code. Taxable income under the Code consists of gross income minus specific deductions. I.R.C. § 63. Section 162 of the Code defines allowable deductions for trade or business expenses. Those deductions include "a reasonable allowance for salaries or other compensation for personal services actually rendered." I.R.C. § 162 (a)(1). The applicable regulation under § 162 sets forth the following test for deductibility of this allowance: "The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." 26 C.F.R. § 1.162-7(a).

"In light of the specific reference in N.J.S.A. 54:10A-4(k) to the federal income tax, the decisional law under the Internal Revenue Code is relevant to a determination of the standards to be applied in segregating compensation from dividends under the" CBT Act. Id. at 176.

After examining federal precedents addressing whether a distribution reported as compensation should instead be considered a dividend, Judge Kuskin adopted the test established in Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983). Under the two-prong Elliotts test, in order for a distribution to constitute compensation for services rendered "(1) the amount of the compensation must be reasonable and (2) the payments must in fact be purely for services." Id. at 177 (quoting Elliotts, 716 F.2d at 1243). The court continued,

Proof of the second prong, which requires a "compensatory purpose," can be difficult to establish because of its subjective nature. The existence of a compensatory purpose can often be inferred if the amount of the compensation is determined to be reasonable under the first prong. For these reasons, courts generally concentrate on the first prong – whether the amount of the purported compensation is reasonable.

[Ibid.]

To determine whether purported compensation is reasonable under the Elliotts test, the court considers:

17

> the employee's role in the corporation, a comparison of the compensation payment with those paid by similar companies for similar services, the size and complexity of the company's business, the existence of a relationship between the company and its employee which would permit disguising of nondeductible dividends as salary, and whether internal consistency exists in the corporation's treatment of payments to employees.
>
> [Id. at 177 (citing Elliotts, 716 F.2d at 1245-48).]

These factors, which are viewed from the perspective of a hypothetical independent shareholder, id. at 178, are addressed in turn below.

1. Employee's Role in the Corporation.

Johnson and Capoferri are the sole shareholders, officers, and directors of Shore Building. They formed the company, have lent it money to meet operating expenses, and are solely responsible for the operation of its business. Johnson is the onsite supervisor of employees working in the field and has significant responsibility for the day-to-day operation of the business. Capoferri is crucial to Shore Building's ability to bid successfully on projects, provides valuable expertise, and oversees all aspects of Shore Building's operations. Johnson and Capoferri make all financial decisions for Shore Building and have control over the distribution of its assets.

2. Comparison to Compensation Paid by Similar Companies for Similar Services.

The record contains no evidence with respect to compensation paid by companies similar to Shore Building for services similar to those provided by Johnson and Capoferri during the tax years in question. The court, therefore, cannot determine whether the 2006 and 2007 distributions were reasonable compensation for high-level employees in the general contractor field.

3. The Size and Complexity of Shore Building.

Shore Building is modest in size. The company had approximately fifteen employees during the tax years in question with a total payroll of approximately $1.6 million. In 2006, the

18

company had approximately $13 million in construction contracts. In 2007, construction contracts totaled approximately $17 million. The corporate structure of Shore Building is not complex.

4.  Relationship Between Johnson, Capoferri, and Shore Building.

As noted above, Johnson and Capoferri control Shore Building and all of its financial decisions. They are in a position to disguise dividend payments as compensation for management services. The record contains no evidence of a corporate resolution or other official decision authorizing the 2006 and 2007 distributions to Johnson and Capoferri. The company's CFO testified that he made the distributions pursuant to paragraph 7 of the shareholders agreement with the consent of Johnson and Capoferri.

5.  Internal Consistency in Treatment of Compensation Payments.

In 2006 and 2007, Johnson received a salary paid on a regular basis for the services he provided to Shore Building. This was the consistent practice since the formation of the company. In 2006, he received $119,600 in wages, which was less than four of the company's fifteen employees. In 2007, Johnson received $356,000, almost three times the salary he received the prior year. Capoferri has never taken a salary from Shore Building.

The 2006 and 2007 distributions were not calibrated to reflect any specific time worked or services provided by either Johnson or Capoferri. Other employees were compensated based on the hours they worked. The 2006 distribution was equal to approximately 70% of the company's net income for that year. The 2007 distribution exceeded by approximately $100,000 the entirety of the company's net income for that year. Payments of this magnitude to Johnson and Capoferri were not consistent with the method in which Johnson had been previously compensated, with Capoferri's practice of not accepting compensation, or with the compensation of other employees.

Having reviewed these each of the factors, the court concludes that the 2006 and 2007 distributions were dividend payments. There is no evidence in the record establishing that it would be reasonable for Johnson to receive, in addition to his salary, $282,158 (allowing for a $100,000 return of loaned funds), an amount nearly twice his salary. In addition, in 2007, Johnson's salary nearly tripled from the prior year. Nothing in the record suggesting that an additional $1,088,834 would be reasonable compensation for the services he provided in 2007. These conclusions are particularly apt where the taxpayers introduced no credible evidence of what companies similar to Shore Building paid as compensation for services similar to those provided by Johnson in 2006 and 2007. The only evidence arguably on point is Johnson's testimony that he "never felt undercompensated" while working at Shore Building, which supports the court's conclusion.

Similarly, the court finds Capoferri elected not to receive a salary from Shore Building at any time after the company's formation. Although he provided services to Shore Building on a regular basis, he kept no records of the hours he worked for the company or tasks he performed. No entries were made in the records of Shore Building of debt to Capoferri for his services.[8] Instead, it is clear to the court Capoferri proceeded on the assumption his services to the company would be compensated by the distribution of profits in the years that Shore Building was profitable. This is precisely what happened in 2006 and 2007. Capoferri received his share of almost all the profits Shore Building generated in 2006 and a little more than all of the profits the company generated in 2007.

A reasonable independent shareholder would view the 2006 and 2007 distributions as Johnson and Capoferri receiving the profits to which they were entitled as shareholders. The

---

[8] The court rejects Shore Building's argument it would not have been reasonable to book a debt for Johnson and Capoferri's management fee because doing so would hurt Shore Building in the bonding market. No evidence was offered to support this argument.

record supports the Director's determinations the 2006 and 2007 distributions were dividends, not deductible as an expense by Shore Building for CBT purposes. The Director's final determinations denying Shore Building's CBT refund requests for 2006 and 2007, therefore, are upheld.

### III. Conclusion

In light of its findings of fact and conclusions of law, the court will:

(1)     Enter judgment affirming the Director's final determination denying Shore Building's request for a refund of CBT for tax year 2006 (Docket No. 002298-2012);

(2)     Enter judgment affirming the Director's final determination denying Shore Building's request for a refund of CBT for tax year 2007 (Docket No. 016994-2012);

(3)     Enter an order pursuant to Rule 8:9-3 directing the parties to submit computations of the Johnsons' GIT liability for tax year 2006 (Docket No. 002027-2012);

(4)     Enter an order pursuant to Rule 8:9-3 directing the parties to submit computations of the Capoferris' GIT liability for tax year 2006 (Docket No. 017329-2011);

(5)     Enter judgment affirming the Director's final determination assessing GIT, penalties, and interest against the Johnsons for tax year 2007 (Docket No. 010595-2012); and

(6)     Enter judgment affirming the Director's final determination assessing GIT, penalties, and interest against the Capoferris for tax year 2007 (Docket No. 010597-2012).

21